UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

UNITED STATES OF AMERICA,

        Plaintiff,                           Case No. 20-CR-20347

v.                                        Honorable Thomas L. Ludington
                                            Magistrate Judge Patricia T. Morris

CHRISTOPHER CORTEZ JONES,

        Defendant.
_____/

**ORDER DENYING DEFENDANT'S MOTION TO SUPPRESS**

On August 5, 2020, a grand jury indicted Defendant Christopher Cortez Jones with one count of being a felon in possession of a firearm, in violation of 18 U.S.C. 922(g)(1). ECF No. 9. Defendant was arraigned on August 13, 2020 and pled not guilty to the charge. On September 11, 2020, Defendant, through counsel, filed a motion to suppress the firearm referenced in the indictment as evidence obtained in violation of the Fourth Amendment to the United States Constitution. ECF No. 15. Plaintiff, the United States of America (the "Government"), responded on October 23, 2020. ECF No. 18. At an evidentiary hearing on November 23, 2020, this Court heard testimony from the arresting officer and reviewed body camera footage of the underlying incident. For the reasons set forth below, Defendant's Motion to Suppress will be denied.

**I.**

At approximately 10:49 P.M. on March 28, 2020, Saginaw County Dispatch received a 911 call reporting shots fired in the 2200 block of Lowell Avenue, Saginaw, Michigan.[1] The caller stated that he lived on the street and that he saw a group of males firing shots. He described the

---

[1] The following facts are taken from the evidentiary hearing on November 23, 2020.

suspects as being associated with a gray GMC Terrain and a white Cadillac that were on the street at the time.

Dispatch relayed the call to Saginaw Police and described the suspect vehicles as a "gray GMC Terrain and black Cadillac."[2] At approximately 11:02 P.M., Officer Beyerlein and his trainee partner arrived at the 2200 block of Lowell Avenue. They immediately spotted two vehicles parked on the westside of Lowell facing south. The southernmost vehicle was a gray GMC Terrain and the vehicle behind it was a Dodge Journey. The Terrain's driver-side door was ajar. The female driver, Ms. Barnes, was seated in the vehicle and speaking with another female, Ms. Young, who was standing on Lowell Avenue. Defendant was seated in the front passenger seat.

Officer Beyerlein and his partner parked alongside the Terrain and exited their squad car. Officer Beyerlein asked if everyone was alright and if anyone had heard gunshots. Ms. Barnes told the officers that they had not heard anything and that they had just arrived. Officer Beyerlein asked Ms. Barnes to step out of the vehicle and she did so. Officer Beyerlein then informed Ms. Barnes that they were responding to a shots fired call and that the suspect vehicle was a gray GMC Terrain. Ms. Barnes stated that her Terrain was tan but Officer Beyerlein disagreed, shining his flashlight on the vehicle. The body camera footage establishes that the Terrain was gray.

Officer Beyerlein testified that based on Ms. Barnes' tight-fitting clothing, he could see that she was not concealing any weapons. Officer Beyerlein's partner frisked Ms. Young and similarly found no weapons. Officer Beyerlein then moved to the passenger side of the Terrain and asked Defendant to step out of the vehicle. Defendant complied. Officer Beyerlein then asked for consent to search Defendant's person. Defendant consented, and no weapons were found.

---

[2] Officer Beyerlein testified that he did not know the 911 caller actually described the Cadillac as white until listening to the call at the hearing.

At that point, Ms. Barnes had returned to the driver's seat. Officer Beyerlein leaned into the open front passenger door and ordered Ms. Barnes to exit the vehicle. He then asked, "Are there any guns in the car?" Ms. Barnes responded, "No." Officer Beyerlein then, while still leaning into the vehicle, asked, "Would you mind if I checked?" Ms. Barnes responded, "No. I'm just saying, like, why is you checking my car? This ain't gray." Officer Beyerlein replied, "It's awful close." He then looked underneath the passenger seat and spotted the grip of a pistol. He turned to Defendant and asked him to put his hands up. Defendant fled. The officers pursued and apprehended him a few moments later. Defendant was subsequently indicted for being a felon in possession of a firearm, in violation of 18 U.S.C. § 922(g)(1). ECF No. 9.

**II.**

The Fourth Amendment guarantees "[t]he right of the people to be secure in their persons . . . against unreasonable searches and seizures." U.S. Const. amend. IV. "When a motorist is stopped by the police, he, and all of his passengers, are 'seized' within the meaning of the Fourth Amendment." *United States v. Pacheco*, 841 F.3d 384, 389–90 (6th Cir. 2016) (citing *Brendlin v. California*, 551 U.S. 249, 256–59 (2007)). While "[a] warrantless seizure is presumptively unreasonable," there are three notable exceptions: "(1) consensual encounters in which contact is initiated by a police officer without any articulable reason whatsoever and the citizen is briefly asked questions; (2) a temporary involuntary detention or *Terry* stop which must be predicated upon 'reasonable suspicion;' and (3) arrests which must be based upon 'probable cause.'" *United States v. Jones*, 562 F.3d 768, 772 (6th Cir. 2009) (quoting *United States v. Pearce*, 531 F.3d 374, 379 (6th Cir.2008)).

Under *Terry*, "an officer may conduct an investigatory stop only if he has [a] 'reasonable, articulable suspicion that the person has been, is, or is about to be engaged in criminal activity.'"

*United States v. Johnson*, 620 F.3d 685, 692 (6th Cir. 2010) (quoting *United States v. Place*, 462 U.S. 696, 702 (1983)). "Courts determine whether a reasonable suspicion exists by looking at the totality of the circumstances and considering all of the information available to law enforcement officials at the time." *United States v. Urrieta*, 520 F.3d 569, 573 (6th Cir. 2008) (internal quotation marks omitted). "If the initial traffic stop is illegal or the detention exceeds its proper investigative scope, the seized items must be excluded under the 'fruits of the poisonous tree doctrine.'" *United States v. Hill*, 195 F.3d 258, 264 (6th Cir. 1999)

### III.

The sole issue here is whether Officer Beyerlein had reasonable suspicion to stop the Terrain.[3] Defendant argues that Officer Beyerlein lacked reasonable suspicion because the 911 call was unreliable. ECF No. 15 at PageID.51–53. As Defendant correctly notes, "an anonymous tip alone seldom demonstrates the informant's basis of knowledge or veracity." *Alabama v. White*, 496 U.S. 325, 329 (1990). However, "there are situations in which an anonymous tip, suitably corroborated, exhibits sufficient indicia of reliability to provide reasonable suspicion to make the investigatory stop." *United States v. Hudson*, 405 F.3d 425, 432 (6th Cir. 2005) (internal citations and quotation marks omitted). "Consequently, where a tip contains independently verifiable details showing knowledge, that are sufficiently corroborated by the police prior to initiating the seizure of the suspect, reasonable suspicion exists." *Id.* (internal quotation marks and citations omitted).

In *Robinson v. Howes*, 663 F.3d 819 (6th Cir. 2011), the Sixth Circuit found that a 911 caller's report of shots fired provided reasonable suspicion for a stop. The caller reported that a

---

[3] When Officer Beyerlein asked Ms. Barnes to step out of the vehicle and informed her that the Terrain was suspected of being involved in a shooting, she and Defendant were "seized" for purposes of the Fourth Amendment. *See Brendlin*, 551 U.S. at 257 ("[A] sensible person would not expect a police officer to allow people to come and go freely from the physical focal point of an investigation into faulty behavior or wrongdoing."). The Government has not argued otherwise.

black male in a yellow car was shooting into a neighboring home. *Robinson*, 663 F.3d at 827. Police arrived to find a bright yellow Chevy parked near the reported address. *Id.* at 821. As police approached with guns drawn, the defendant, a black male, exited the vehicle exclaiming that he had done nothing wrong. *Id.* He tried to move away from the police but was intercepted and apprehended. *Id.* at 821–22. Looking at the totality of the circumstances—including the nature of the call and the defendant's behavior—the Sixth Circuit concluded that the police had reasonable suspicion to conduct the stop. *Id.* at 829–31.

Here, the 911 caller described a gray GMC Terrain, a white Cadillac, and several unknown males at 2200 Lowell Avenue. Officer Beyerlein and his partner arrived at the scene roughly 10 minutes later and observed a gray GMC Terrain with multiple occupants. Officer Beyerlein's corroboration of key facts shortly after the call provided a reasonable and articulable basis for the stop. The discrepancies between the 911 call and the observations of Officer Beyerlein are outweighed by the fact that the caller was a contemporaneous witness to an ongoing emergency. *See Howes*, 663 F.3d at 830 (6th Cir. 2011) (finding that "[f]irsthand knowledge and contemporaneity weigh in favor of a statement's reliability" and that "emergency nature of the call . . . adds to the totality of the circumstances comprising reasonable suspicion").

Defendant's reliance on *United States v. Patterson*, 340 F.3d 368 (6th Cir. 2003), is misplaced. In *Patterson*, a tipster reported to an anonymous hotline that a group of unidentified males was selling drugs at a certain location. *Patterson*, 340 F.3d at 369. The police arrived at the location several hours later and observed a group of males, including the defendant. *Id.* The men began walking away as the police exited their squad cars. *Id.* The police stopped and frisked the men, resulting in the defendant being arrested for unlawfully possessing a firearm. *Id.* at 370. The Sixth Circuit found that the police lacked reasonable suspicion to conduct a stop, holding that the

anonymous tip "offered no reliable or meaningful information in support of reasonable suspicion because it was not specific enough as to a prediction of future unlawful activities." *Id.* at 371. The Sixth Circuit further explained that "[w]ithout the anonymous tip, the officers merely observed a group of individuals walking away from the area, in isolation an innocuous behavior unless the officers have detained them." *Id.*

The facts here are readily distinguishable from *Patterson*. Officer Beyerlein and his partner arrived roughly 10 minutes after a contemporaneous witness reported shots fired. The officers in *Patterson*, by contrast, arrived five and half hours after an anonymous tip that left no meaningful information about the crime. *C.f. Patterson*, 340 F.3d at 370. Additionally, on their arrival, Officer Beyerlein and his partner observed a vehicle matching the 911 description: a gray GMC Terrain. Indeed, the 911 caller's description proved reliable except for the lack of a Cadillac and the presence of one as oppose to multiple males—a discrepancy that might easily be explained by the 10-minute delay between the call and the officers' arrival.

Furthermore, as in *Robinson*, the stop was also supported by Ms. Barnes' presence at the location described to the 911 dispatcher as well as her behavior. Before Officer Beyerlein asked Ms. Barnes to step out of the vehicle, he asked whether anyone had heard shots being fired. Ms. Barnes denied hearing any shots and said that they had just arrived—an account which seemed unlikely given the 911 call, the hour of the evening, and the lack of any explanation for her presence at the location. After Ms. Barnes was informed that the suspect vehicle was a gray GMC Terrain, she insisted that her vehicle was tan, even though a quick shine of the flashlight proved that it was gray. This behavior, while not physically evasive, would nonetheless strengthen the inference that Ms. Barnes and her vehicle may have been involved in a crime or known something about the firearm shots. Accordingly, based on the matching description—including matching

make, model, and color of the suspect vehicle—as well as Ms. Barnes' behavior, Officer Beyerlein had reasonable suspicion to briefly detain the Terrain and its occupants.

Despite the parties' acknowledgment, this Court cannot reach the question of whether Officer Beyerlein's search of the Terrain was constitutional.[4] While "[a] passenger has standing to challenge . . . [the] stop of a vehicle in which he is riding," *United States v. Jones*, 147 F. Supp. 2d 752, 757 (E.D. Mich. 2001), "[c]ourts have routinely held that passengers who have no expectation of privacy or possessory interest in a stopped vehicle do not have standing to challenge the validity of a subsequent search of that vehicle on Fourth Amendment privacy grounds." *United States v. Bah*, 794 F.3d 617, 626 (6th Cir. 2015)). Defendant does not allege any privacy or possessory interest in the Terrain. *See United States v. Abrams*, 494 F. Supp. 2d 657, 661 n.6 (S.D. Ohio 2005) ("It is axiomatic that a defendant has the burden of showing that [he] had a reasonable expectation of privacy in the area searched.") (citing *Rakas v. Illinois*, 439 U.S. 128, 130 n.1 (1978)). As a result, the sufficiency of the consent search—specifically, Officer Beyerlein's use of ambiguous phrasing and Ms. Barnes' apparent protest—is beyond the scope of this opinion.[5]

Accordingly, it is **ORDERED** that Defendant's Motion to Suppress, ECF No. 15, is **DENIED**.

It is further **ORDERED** that a plea cut-off date is January 4, 2021, a final pretrial

---

[4] The issue was raised by the Government during briefing (ECF No. 18 at PageID.65–67) and by defense counsel during the cross-examination of Officer Beyerlein.

[5] For consent searches, "not any type of consent will suffice, but instead, only consent that is 'unequivocally, specifically, and intelligently given, uncontaminated by any duress and coercion.'" *United States v. Worley*, 193 F.3d 380, 386 (6th Cir. 1999) (quoting *United States v. Tillman*, 963 F.2d 137, 143 (6th Cir. 1992)).

conference is **SCHEDULED** for **January 5, 2021 at 3:00 PM** and a jury trial is **SCHEDULED** for **January 19, 2021 at 8:30 AM**.


Dated: December 17, 2020     s/Thomas L. Ludington
THOMAS L. LUDINGTON
United States District Judge